UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RAVON JETER, Sr.,

    Plaintiff,

v.

FAISAL V. AHMED, et al.,

    Defendants.

Case No. 1:13-cv-244

Weber, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

### I. Background

Plaintiff, currently incarcerated in the Southern Ohio Correctional Facility in Lucasville, Ohio and proceeding *pro se,* filed this lawsuit against multiple employees of the prison and the Ohio Department of Rehabilitation and Correction ("ODRC"), including Health Care Supervisor Rosie Clagg and ODRC Assistant Chief Medical Inspector Mona Parks. (Doc. 3, Complaint at 8).  On April 19, 2013, the Court reviewed Plaintiff's claims under the screening standards of 28 U.S.C. §§1915(e) and 1915A, and directed summons to issue to Defendants Dr. Ahmed, Mrs. Lapushansky, Nurse Carter, Rosie Clagg, Doctor Kline, and Mona Parks, for claims of deliberate indifference to serious medical needs and/or cruel and unusual punishment. (Doc. 4).  An additional claim against Defendant Lt. Sample was severed and transferred to the Northern District of Ohio. (Doc. 4 at 4-5).

Four Defendants answered the complaint.  (Doc. 7).  However, Defendants Clagg and Parks filed a motion to dismiss based upon a failure to state a claim against

them. (Doc. 8). The undersigned recommended that the motion to dismiss be granted, and that Report and Recommendation ("R&R") was subsequently adopted by the presiding district judge as the opinion of the Court. (Docs. 18, 20).

After a period of discovery, on February 27, 2014, the four remaining Defendants filed a motion for summary judgment. (Doc. 23). Plaintiff was initially directed to "show cause" why the motion should not be granted when he failed to file any timely response, but he subsequently filed two belated responses. (Docs. 25, 28). On April 18, 2014, Defendants filed a reply in support of their motion for summary judgment. (Doc. 29). For the reasons that follow, Defendants' motion should be granted.

**II.    Analysis**

**A.  Summary Judgment Standard**

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts – in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment – rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that the facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record

evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita*, 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*, 475 U.S. at 586-87 (citation omitted). It is the plaintiff's burden to point out record evidence to support his claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. of Com'rs*, 637 F.

3

Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007)).

## B. Defendants' Motion for Summary Judgment

### 1. Failure to Serve Responses

As an initial matter, Defendants argue that this Court should not consider either of Plaintiff's responses because he failed to serve Defendants with a copy of those responses. Defendants automatically received electronic copies of both documents when they were docketed by the Clerk of Court. In the interests of justice, the undersigned declines to adopt Defendants' argument on this issue.

### 2. The PLRA's Exhaustion Requirement

Pursuant to the PLRA, prisoners are required to fully exhaust available institutional remedies prior to filing suit in federal court. *See* 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In *Porter v. Nussle*, the Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. 516, 532 (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299, n. 1 (1991)).

It has become well-established that "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 204 (2007). The PLRA requires "proper exhaustion of all administrative remedies," meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo*, 548 U.S.

4

81, 88-90 (2002) (emphasis added). The exhaustion requirement's goals can be achieved "only if the prison grievance system is given a fair opportunity to consider the grievance. That cannot happen unless the grievant complies with the system's critical procedural rules." *Id.* at 82. If a prisoner fails to exhaust available administrative remedies before filing a complaint in federal court, or only partially exhausts them, dismissal of the complaint is appropriate. *Hopkins v. Ohio Dep't of Corr.*, 84 Fed. Appx. 526, 527 (6th Cir. 2003) (citing 42 U.S.C. § 1997e(a)); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). "Exhaustion may not be completed after a federal complaint has been filed." *Hopkins*, 84 Fed. Appx. at 527 (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)). "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. at 204).

The Ohio Department of Rehabilitation and Correction ("ODRC") offers a three-step grievance system to every inmate at each of its institutions. Ohio Admin. Code 5120-9-31(K) (2013) (West). All inmates and staff members receive a written explanation of the grievance system and instructions for its use. § 5120-9-31(C).

The first step of the grievance procedure allows inmates to submit an informal complaint to the supervisor of the department or staff member directly responsible for the issue concerning the inmate, but requires any such complaint or grievance to be submitted no later than fourteen days from the date of the event giving rise to the grievance. OAC § 5120-9-31(K)(1).

5

Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification of Grievance form from the Inspector of Institutional Services, and filing a formal grievance at the prison where the inmate is confined. § 5120-9-31(K)(2).  Formal grievances must be submitted within fourteen days from the date an inmate receives a response to his informal complaint at step one. OAC § 5120-9-31(K)(2).

If dissatisfied with the results of his formal complaint at step two, the inmate may proceed to step three of the grievance process by requesting an appeal form from the Office of the Inspector of Institutional Services, and submitting an appeal to the Office of the Chief Inspector at ODRC. OAC § 5120-9-31(K)(3). The step three appeal must be filed within fourteen days of the inmate receiving a disposition to his formal complaint. OAC § 5120-9-31(K)(3). The Chief Inspector is to provide a written response within thirty calendar days of receiving an appeal, unless he extends the time frame for good cause and notifies the inmate. OAC § 5120-9-31(K)(3).  Decisions of the Chief Inspector are final – meaning the Ohio Administrative Code provides no further means for appeal. OAC § 5120-9-31(K)(3).

Defendants seek judgment as a matter of law based upon Plaintiff's failure to timely and/or fully exhaust his administrative remedies within the prison grievance system before filing suit in this Court.  Plaintiff's complaint reflects the submission of three closely related grievances pertaining to his medical treatment.  (Doc. 3-1).  One of those grievances was an informal complaint against Dr. Ahmed dated February 13, 2013.  Plaintiff received a written response to that grievance two days later from Defendant Clagg, (Docs. 23-1, 23-2), but did not comply with the second and third steps

6

of the procedure by filing either an appeal with the Institutional Inspector or with the Office of the Chief Inspector concerning his February 13, 2013 grievance. (*Id.* at ¶12).

In addition, Defendants have submitted evidence (also attached as exhibits to Plaintiff's complaint) that the appeal of the two other related grievances filed by Plaintiff was rejected as untimely at step three, by the Chief Inspector. (Doc. 3-1 at 4). Step three requires an inmate to file his appeal with the Office of the Chief Inspector within fourteen (14) calendar days of the prior disposition of the grievance. OAC § 5120-9-31(K)(3). In his response, the Chief Inspector points out that Plaintiff's duplicative appeals were received "4 weeks after the response from the inspector," making the appeal untimely. (Doc. 3-1 at 4). Having documented Plaintiff's lack of timeliness, the Chief Inspector elected to "complete a cursory review" of Plaintiff's grievance "due to the medical nature" of his complaints. (*Id.*). The result of that review was an alternative denial on the merits of Plaintiff's claims.

Defendants persuasively contend that they are entitled to judgment based upon Plaintiff's untimely appeal despite the Chief Inspector's decision to reach the merits of his appeal. (Doc. 54). In *Vandiver v. Corr. Med. Servs.*, 326 Fed. App'x 885, 889 (6th Cir. 2009), the Sixth Circuit upheld the dismissal of the plaintiff-inmate's claims for failure to exhaust administrative remedies where the final administrative "denial concluded both that the grievance was not filed timely and that [the] plaintiff had received appropriate medical care." The Sixth Circuit explained that "[w]here the grievance is denied alternatively on the merits and for failure to comply with critical grievance procedures, a later action will be subject to dismissal for failure to properly exhaust under *Woodford*." *Id.* at 889. *See also Grear v. Gelabert*, No. 07-CV-203, 2008

7

WL 474098, at *2, n. 1 (W.D. Mich. Feb. 15, 2008) ("A state is, of course, always free to reject a grievance both for failure to properly comply with available procedures *and* on the merits. . . . As long as the 'procedural default' rejection is clear, a subsequent 42 U.S.C. § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust."); *Hall v. Raja*, No. 09-10933, 2010 WL 3070141, at *2 (E.D. Mich. Aug. 2, 2010) ("As the Sixth Circuit recently recognized, a prison may properly preserve its right to subsequently seek dismissal of a prisoner's federal lawsuit for failure to exhaust, where it both denies the grievance on the merits *and* denies it for failure to comply with 'critical grievance procedures.'" (quoting *Vandiver*, 326 Fed. Appx. at 889)); *Norris v. Warren County Reg'l Jail*, No. 1:11-CV-P155-M, 2012 WL 1637074, at *3 (W.D. Ky. May 9, 2012) (holding that "dismissal of a subsequent civil action for failure to properly exhaust is appropriate" where the "prison concluded that [the plaintiff] did not appeal timely and only, alternatively, informed [the plaintiff] that his appeal would have been denied on the merits had it been timely"). *But contrast Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010)(holding, in case where the procedural default was "overlooked (or perhaps [forgiven])," that "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." )

Here, the Chief Inspector's decision made plain that the decision was a denial for failure to properly exhaust administrative remedies, and, alternatively on the merits. Because the timeliness defect of Plaintiff's appeal to the Office of the Chief Inspector was not waived by prison officials, Plaintiff has failed to properly exhaust his administrative remedies in accordance with OAC § 5120-9-31 as required by 42 U.S.C.

8

§ 1997(e)(a). Plaintiff has presented no evidence to excuse his failure to properly comply with the grievance process despite the filing of two (tardy and unserved) responses. Accordingly, summary judgment should be granted in favor of all Defendants.

### 3. Defendant's Alternative Argument on the Merits

In the alternative, Defendants argue that they have provided evidence of undisputed facts and case law to support judgment in their favor on the merits. Given the purpose of the PLRA's exhaustion requirement, the undersigned finds it unnecessary and contrary to Congressional intent to fully discuss Defendants' alternative argument. However, in the interest of providing a complete record to any reviewing court, a brief analysis is provided.

Plaintiff does not respond directly to Defendants' Statement of Proposed Undisputed Facts (Doc. 23 at 2-5), leaving those facts arguably uncontested. Plaintiff does indirectly respond, but for the reasons stated by Defendants, the few "disputed" facts he attempts to present are refuted by the record, and/or are unsupported except by Plaintiff's own uncorroborated (and newly presented) allegations.

In order to prove a violation of the Eighth Amendment based upon inadequate medical care, Plaintiff would have to show more than a mere "difference of opinion between him and the prison health care providers and a dispute over the adequacy of his treatment." *Apanovitch v. Wilkinson*, 32 Fed. Appx. 704, 707 (6th Cir. 2002)(affirming summary judgment). Where an inmate has received medical attention, and merely disputes the adequacy of that treatment, federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that

9

sound in state tort law. *See Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)(differences in judgment between an inmate and medical personnel regarding appropriate treatment are not enough to state a deliberate indifference claim).  The records provided by Defendants in support of their motion for summary judgment leave no doubt that Plaintiff received frequent and regular medical care, which could not possibly support either the objective or subjective components of an Eighth Amendment claim.  Plaintiff's allegations, *at most*, state a claim for negligence or malpractice, which is insufficient to state a constitutional claim.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  In part because no violation of any constitutional right has been stated, Defendants also are entitled to qualified immunity to the extent that they have been named in their individual capacities.

In his responses, Plaintiff argues that Defendant Dr. Ahmed "ignored" his complaints about swelling and pain in his legs.  (Doc. 28 at 1).   Upon Plaintiff's subsequent transfer to SOCF on January 28, Plaintiff asserts that Dr. Ahmed "took all my medication and denied me treatment also for the swelling in my legs + feet but also took my ankle brace and refuse me treatment, as an [sic] result my leg swell & foot became infected." (*Id.* at 1-2). However, the evidence submitted by Defendants reflects that Plaintiff was originally prescribed an ankle sleeve and compression socks for treatment of his foot and ankle condition.  After his transfer to SOCF, and after he complained that the ankle sleeve prescribed by the podiatrist was not "working at all," Dr. Ahmed examined him.  Dr. Ahmed observed that Plaintiff was comfortable and ambulated without difficulty, ordered x-rays of Plaintiff's foot and ankle (which were entirely normal), and discontinued the ankle sleeve based upon his medical judgment

that it was unnecessary. Plaintiff has failed to submit any competent medical evidence that any harm resulted from this allegedly inadequate medical treatment. Courts reviewing far more serious allegations of medical negligence have found no violation of the Eighth Amendment when no serious harm resulted. *Compare Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(no evidence that harm resulted from missed dialysis treatment).

Plaintiff additionally alleges that although he was repeatedly x-rayed for the foreign objects that he willingly ingested (on multiple occasions), Dr. "Kline did not offer any treatment to help the pain and blood I was vomiting." Apart from the fact that there is no evidence that Plaintiff ever vomited blood from his ingestion of metallic pieces of a shower head (a new allegation in Plaintiff's responses), Plaintiff does not deny that he was x-rayed after that incident. Defendants have submitted evidence that the standard procedure when an inmate ingests a foreign object is to perform an x-ray to confirm ingestion, prescribe medication to assist with expelling the object, and then perform another x-ray to confirm expulsion. (Lapushansky Aff. at ¶7). Plaintiff was treated according to that procedure. Plaintiff admits that he also was provided pain medication, though he argues that he only received adequate pain medication when Nurse Carter provided it after confirming with "dental" that medication was appropriate. (Doc. 28; *see also* Doc. 25 at 1, inconsistently alleging that Nurse Carter ignored his pain). A disagreement with the adequacy of pain management is a common type of complaint involving a question of medical judgment that arises in the prison context. The records here belie any suggestion that this would be the rare case in which Plaintiff's

11

disagreement with the timing and amount of pain medication administered to him could support an Eighth Amendment claim.

In sum, claims involving delayed or missed doses of medication, or "claims based on a determination by medical personnel that medical treatment was unnecessary," require judicial determinations of whether a prisoner was treated adequately, whether any delay was harmless, or whether the prisoner had a "very minor injury for which many people outside prison would not even think of seeking medical treatment."  *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897-898 (6th Cir. 2004)(collecting cases).   The Sixth Circuit has adopted a "practical and logical" approach to such claims, holding that '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Id.* at 898, quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(additional quotation omitted).  Here, examination of the records submitted by Defendants and the lack of any contrary evidence submitted by Plaintiff confirm the absence of any possible Eighth Amendment violation.

### III.  Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 23) be **GRANTED,** that judgment be rendered in favor of all Defendants on all claims, and that this case be closed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RAVON JETER, Sr.,

    Plaintiff,

Case No. 1:13-cv-244

Weber, J.
Bowman, M.J.

  v.

FAISAL V. AHMED, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).